Nicholas Ranallo, Attorney at Law (SBN #275016)
371 Dogwood Way
Boulder Creek, CA 95006
Phone: (831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com
Attorney for ISP Subscribers at IP Address 24.7.173.114 & 98.224.125.211

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) Case No.: 1:12-cv-00888-AWI-DLB |
| Plaintiff, | ) Magistrate Judge Dennis L. Beck |
| vs. | ) MEMORANDUM IN SUPPORT OF |
| | ) OMNIBUS MOTION FOR A PROTECTIVE |
| JOHN DOE 1-59, | ) ORDER, MOTION TO SEVER AND |
| | ) MOTION FOR RECONSIDERATION |

Movants, John Does #14 & #32 (IP Addresses 24.7.173.114 & 98.224.125.211), through undersigned counsel, hereby submit this Omnibus Motion for a Protective Order , Motion to Sever, and/or Motion for Reconsideration.  For the reasons set out more fully below, Movant requests that this court issue a Protective Order prohibiting the Movant's ISP from releasing his name and identifying information to Plaintiff in this action.  In addition, Movants request that the magistrate recommend that the claims against Does 2-59 be severed due to misjoinder or that this court vacate its prior order authorizing early discovery as to Does 2-59.

### I.  INTRODUCTION: A BRIEF HISTORY OF MASS DOE LITIGATION

This case is the latest installment in a wave of mass "John Doe" copyright infringement lawsuits that have swept through district courts around the country.  Certain features have become hallmarks of this brand of litigation. First, Plaintiff files a single suit seeking the identities of dozens or hundreds of unrelated individuals based on a generalized allegation that each has "shared" one of the plaintiff's copyrighted works – usually a pornographic film with an

Memorandum in Support of Motion for Protective Order - 1

obviously pornographic title.  Plaintiff pays a single filing fee of $350 (instead of, for example, the approximately $20,000 that would be required to file suit individually against each John Doe in this matter).

Next, the plaintiff seeks an ex parte order for early discovery from the court, in the form of ISP subscriber names, addresses, telephone numbers, etc. of the ISP subscriber associated with particular IP addresses.  Plaintiffs issue these subpoenas from distant locations having no relation to the underlying lawsuit.  The individual identified by the subpoena is the individual whose name appears on the internet bill at a particular location, which has no necessary connection to the actual infringer of Plaintiff's copyrights.  As there is no identifiable defendant at the ex parte stage, a plaintiff is allowed to make various questionable representations (like those challenged herein) in support of its ex parte motion.  These representations remain unchallenged for months, until long after the ex parte order has issued and the ISP subscribers are faced with their first Cornelian dilemma: pay an attorney to attempt to protect your identity, or allow your identity to be obtained by porn purveyors that will use that information to threaten and embarrass you.

Plaintiff's counsel in this matter have added its own wrinkle to these suits: file a single suit based on a single allegedly infringed work and use the discovery from that suit to seek settlement for many totally unrelated infringements.  For example, John Doe # 14 is (as it turns out) accused of infringing 17 works over the course of two months.  John Doe # 32 is likewise accused of infringing 3 totally distinct works, on distinct dates.  Not only is this incredibly misleading for the court and Doe Defendants, it also undermines Plaintiff's joinder arguments. Further, this tactic ignores the reality of dynamic IP addresses and the fact that an individual subscriber's IP address on May 1st might be  different from that individual's IP address on May 2nd.  The requested early discovery is limited to a single alleged date of infringement, and is wholly insufficient to support the proposition that the given IP address was continuously assigned to the same individual over the course of several months – though the subscriber will be asked to settle allegations occurring over the course of weeks or months.

The next step in the mass copyright suit is also the most important – the threats. After obtaining the ex parte discovery, plaintiff may now start calling the subscriber or their family at home or work, threatening to sue the ISP Subscriber (whether or not they have actually infringed any copyright) for the alleged copying and distribution of the aforementioned graphically titled adult work. Or, as plaintiffs are quick to reassure the subscriber, one can make it all go away by simply paying several thousand dollars. <u>Each subscriber is faced with this choice, whether or not they have ever infringed any copyright, and whether or not they have ever heard of the BitTorrent protocol.</u> As plaintiffs well know, a subscriber's decision to settle is often wholly unrelated to whether or not they have infringed any copyrighted work, and is influenced solely by a desire to avoid the embarrassment and legal expense required to establish one's innocence.

The final step in these mass copyright cases is, almost invariably, a slow death. The case languishes and eventually the Does are dismissed without prejudice. Sometimes these dismissals are voluntary, as the plaintiff has received all the information they need and have no reason to maintain the fiction that they actually intend to sue all of the Does in the mass suit. Other times the dismissals are involuntary – because the forum determines that joinder or venue is inappropriate, or that the requested discovery is unwarranted. Regardless of the reason for the dismissal, a Sword of Damocles is left hanging over the heads of the unfortunate identified subscribers, who must now live in fear of an illegitimate lawsuit from a company that should, in hindsight, not have gotten their personal information.

Plaintiffs may continue to threaten future suits until the statute of limitations expires, despite the clear lesson of the recent wave of suits: **<u>Only a TINY fraction of those threatened are ever served in a copyright infringement action.</u>** The reason is simple: plaintiffs truly have no idea whether the subscriber committed copyright infringement, and if they *actually* served a summons and complaint on a subscriber (rather than simply threatening to do so), they would immediately expose themselves to potential liability for costs and attorney fees under 17 U.S.C. §505.

//

//

## II.  RELVANT PROCEDURAL BACKGROUND

The complaint in the instant action was filed on May 29, 2012, against 59 distinct ISP subscribers, alleging copyright infringement.  Plaintiff herein allegedly owns the relevant rights to "Lunchtime Fantasy," which it claims as the basis for this suit and its request for early discovery.  On May 31, 2012, Plaintiff sought an ex parte order for early discovery from this court, which was granted the next day.

Defendants herein are 59 unrelated individuals that are accused of downloading Plaintiff's work sometime between March 19, 2012 and May 23, 2012 – a span of over two months.  Movants herein are two unrelated ISP subscribers, identified by IP addresses 24.7.173.114 (Doe #14) & 98.224.125.211 (Doe #32).  They are accused of downloading and sharing Plaintiff's "Lunchtime Fantasy," on April 25, 2012 and March 31, 2012, respectively.

Plaintiff claims that this suit involves only the single named film.  Plaintiff's counsel, in fact, states that "**the claims against each of the Defendants are identical**" and "each of the Defendants is jointly and severally liable for the infringing activities of each of the other Defendants..."(Doc. 1 at pg. 2).  However, upon notifying Plaintiff's counsel that Does 14 & 32 were represented, I was notified that Plaintiff was seeking settlement of upwards of $10,000 for Doe #14 based on a total of 17 works that were allegedly infringed (though certainly not mentioned in the complaint in this matter).  See *Ranallo Declaration* at ¶4-7.  Present counsel was likewise informed that Doe #32 was accused of downloading two additional works that were not mentioned in the complaint and involve totally different works even than Doe #14.  Plaintiff has made it clear that it will not agree to settle any allegations regarding the work at issue in this suit unless the Doe Defendants also pay settlements for the unpled works.  *See Ranallo Dec.* at ¶7.

## III.  STANDING

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena.  *See Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (D.D.C. 2005).  Movant herein has a clear personal

and proprietary interest in the personal details sought.  Congress has recognized that subscribers have a privacy interest in their personally identifying information kept by the ISPs.  H.R. Rep. 98-934, at *79 ("The Congress is recognizing a right of privacy in personally identifying information collected and held by a cable company…").

Numerous other courts, faced with nearly identical BitTorrent lawsuits, have likewise concluded that the account-holder associated with an identified IP address may challenge subpoenas issued to the subscriber's ISPs.  See, e.g. *Hard Drive Productions, Inc. v. Does 1-188* No. C-11-01566 2011 WL 5573960 (N.D. Cal. 2011) (Order Granting Doe's Motion to Quash); *Boy Racer, Inc. v. Does 1-60* No. C-11-01378 (N.D. Cal. August 19, 2011.) (Doc. 24) (Order Granting Doe Defendant's Motion to Quash and Dismissing Case Without Prejudice); *Ingenuity 13,* 2:11-mc-00084-JAM-DAD (Doc 24) (granting two pending subscriber motions to quash); *Nu Image, Inc., v. Does 1-3932* No. 2:11-cv-00545 (M.D. Fla. May 23, 2012) (Doc. 244)(Order granting Doe's Motion to Quash or, in the alternative, to Sever and Dismiss); *In Re BitTorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765 at *13 (E.D.N.Y. May 1, 2012)(granting motions to quash from underlying action).

### IV. **AUTHORITY TO ISSUE PROTECTIVE ORDER**

Fed. R. Civ. Pro. 26(C)(1) provides that a person subject to discovery  may

"move for a protective order in the court where the action is pending …The court may, for good cause, issue an order **to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense**, including one or more of the following…(A) forbidding the disclosure or discovery;" and "(B) specifying terms, including time and place, for the disclosure of discovery."  Fed. R. Civ. Pro. 26(c)(1) (emphasis added).  Indeed, the "[d]iscovery restrictions may be even broader where the target is a non-party." *Dart Indus. Co. v. Westwood Chemical Co.,* 649 F.2d 646, 649 (9th Cir. 1980).

In addition, Rule 26(b)(2), the court must limit discovery if, inter alia, "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Fed. R. Civ. Pro.26(b)(iii).

Although Federal Rule of Civil Procedure 45(c) indicates that a Motion to Quash be filed in the district court for the district that issued the Subpoena, it does not alter the general rule that the broad outlines of discovery in a civil case are to be controlled by the court in which the case is filed. *Straily v. UBS Fin. Servs., Inc.*, No. 07-cv-884-REB-KMT, 2008 WL 5378148, at *2 (D. Colo. Dec. 23, 2008). See Also *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (district where case was pending had authority to issue protective order, pursuant to its right to control general outline of discovery, even though the particular discovery dispute arose from subpoena issued in another district) (citing *Fincher v. Keller Indus., Inc.*, 129 F.R.D. 123, 125 (M.D.N.C. 1990)); *Rajala v. McGuire Woods, LLP* 2010 WL 4683979 at *5 (D. Kan. 2010)("the Court finds the *Straily* and *Static Control* decisions to be well reasoned and reflective of the majority view"); *Best Western Inc. v. Doe,* 2006 WL 2091695 (D. Ariz. 2006)("Rule 45(c) does provide that subpoenas should be enforced by the district court which issued them, but this rule does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery. General discovery issues should receive uniform treatment throughout the litigation, regardless of where the discovery is pursued")(internal quotes and citations omitted).

The Eastern District has also recently granted an ISP subscriber's Motion for a Protective Order and vacated it's order allowing early discovery in a substantially similar BitTorrent action, *Pacific Century Intl., Ltd. v. John Doe* (2:11-cv-03479).

A protective order is a particularly appropriate avenue of relief where, as here, Plaintiff has intentionally issued subpoenas in far-flung jurisdictions having no relation to the instant lawsuit, in order to maximize the burden to the subscribers, all of whom are (presumably) located in this district. Judge Wilkins in the District of Colombia admonished another mass BitTorrent Plaintiff for exactly this behavior, on June 25, 2012, noting that

> "Just as it is improper under Rule 45 to subject non-parties to undue expense, it is also improper to subject non-parties to the undue inconvenience of litigating in a distant forum. A classic example of such an "abuse of subpoena" is described by a case cited approvingly in the Advisory Committee Notes to Rule 45. *See Board of Ed. V. Farmingdale Classroom Teach. Ass'n.,* 343 N.E. 2d 278 (N.Y. 1975). In

*Farmingdale,* the court held that abuse of process occurs when a party manipulates the circumstances to serve process in an inconvenient forum for the persons who must respond, even if it is technically legal to proceed in that forum, because such trickery and cunning [is] degrading to an honorable profession...For these reasons, our circuit has held that nonparty witness territorial convenience is a valid factor to consider on a motion for a protective order in connection with a Rule 45 subpoena. *In re Sealed Case* , 141 F.3d 337, 343(D.C. Cir. 1998).

In light of the foregoing, it is clear that this court has the authority to issue a protective order to protect the identities of Movants herein.

## V.  ARGUMENT

### 1.  This Court Should Grant the Instant Protective Order and Recommend Severance Because Does 2-59 Have Been Improperly Joined

A.  <u>Does 2-59 Have Been Improperly Joined in This Action</u>

Under Rule 20, permissive joinder of defendants is appropriate if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  Each prong of this test must be met for joinder to be proper.  In this case, Plaintiff fails each.  As such, Does 2-59 should be dropped via Rule 21, which allows the court "at any time, on just terms, to add or drop a party." Fed. R. Civ. P. 21.

Multiple district courts across the state and the country have rejected mass joinder in the context of BitTorrent infringement cases.  See, e.g. *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620 (N.D. Cal. Nov. 30, 2011)(severing and dismissing all but Doe 1); *AF Holdings LLC v. Does 1-97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (same*); Pac. Century Int'l Ltd. v. Does 1-101*, 2011 WL 2690142 (N.D. Cal. July 8,2011) (same). In re: BitTorrent Adult Film Copyright Infringement Cases, No. 2:11-cv-3995-DRH-GRB (E.D.N.Y. May 1, 2012); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fla. 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.D.R. 669 (S.D. Fla. 2011) (severing defendants); *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v.*

*Does 1-63,* No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants); Third Degree Films v. Does 1-3577, No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (severing defendants*); K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants).

The Eastern District of California has likewise rejected the mass joinder theory in several recent cases. For example, on June 14, 2012, Judge Delaney issued an "Order and Findings and Recommendations" following John Doe motions to quash in *Smash Pictures v. Does 1-265* and *Smash Pictures v. Does 1-590* (2:12-cv-301-JAM-CKD & 2:12-cv-302-JAM-CKD). Judge Delaney noted that:

> "the Doe defendants have correctly asserted that the mass joinder of unrelated defendants is improper under Federal Rule of Civil Procedure 20. Given the technical complexities of BitTorrent swarm functions, as set forth in Plaintiff's supporting affidavits, it appears unlikely that the Doe defendants engaged in any coordinated effort or concerted activity. Under these circumstances, permissive joinder under Federal Rule of Civil Procedure 20(a)(2) is not warranted."

*Smash Pictures v. Does 1-590,* 2:12-cv-00302 (ECF Doc. 21 at 2)(E.D. Cal. June 14, 2012). On July 10, 2012, District Judge Mendez adopted the recommendations of Magistrate Delaney and dismissed all but Doe #1 from each action.

In addition to Judges Delaney and Mendez, Magistrate Judges Brennan and Newman have likewise denied discovery as to all Does except Doe #1, though on a slightly different rationale, as described further below. *See, e.g. Malibu Media v. Does 1-12,* 2012 WL 2872835 (E.D. Cal. July 11, 2012); *Malibu Media .v Does 1-13,* 2012 WL 2800123 (E.D. Cal. July 9, 2012). Each judge noted that improper joinder "appears endemic to BitTorrent file-sharing cases such as this one." 2012 WL 2872835 at * 4; 2012 WL 2800123 at * 4.

In addition to the multitude of cited decisions rejecting mass joinder of individuals based solely on the allegation that they downloaded the same work from the same swarm, one decision from the District of Arizona is particularly instructive. In *Patrick Collins v. Does 1-54*, No. 2:11-cv-01602; 2012 WL 911432 (D. Ariz. 2012), a BitTorrent copyright case like the instant

matter, the court faced a situation where only two defendants remained in the action.  The court, after a thorough discussion of the joinder rules, determined that <u>the joinder of even two individuals based solely on the allegation that they participated in the same swarm was improper.</u>  The court's reasoning is persuasive.  It stated that:

> "Plaintiff alleges that the two remaining Defendants 'participat[ed] in a BitTorrent swarm with other infringers' but does not claim that John Doe 6 provided data to the former John Doe 12, or vice versa.  Plaintiff included as Defendants only those IP addresses from the swarm in question that were located in Arizona, demonstrating that the actions of the individual members of the swarm are easily distinguishable.  Plaintiff alleges no facts that these two particular Defendants shared data with each other, and provides data instead that they were logged on to BitTorrent weeks apart."

*Patrick Collins, Inc. v. Does 1-54,* 2012 WL 911432 at *5 (D. Ariz. 2012).  In accordance with this reasoning, the court held that "Plaintiff has not demonstrated that John Doe 6 and the former John Doe 12 engaged in a single transaction or occurrence..." and therefore severed John Doe 6. *Id.*

As the preceding authorities illustrate, mass joinder in the context of BitTorrent infringement cases is not justified by F.R.C.P. 20.  The joinder issues in this case are even more glaring, as each defendant is essentially (though still secretly) accused of downloading multiple unrelated works.  Unlike the cases cited above that *still* considered joinder improper, defendants herein are not even accused of downloading the same works.

The fact that Does #14 & #32 are improperly joined in this action represents good cause for the issuance of a protective order prohibiting  the release of Movants identities.  Moreover, as described below, failure to issue such an order will subject Movants to annoyance, embarrassment, undue burden and expense.  Movants likewise request that this court follow the lead of Judge Delaney, and recommend that the claims against Does 2-59 be severed due to misjoinder.

B.  <u>Failure to Issue a Protective Order Will Cause Movants Annoyance, Embarrassment, and Undue Burden & Expense</u>

Rule 26 allows this court to issue a protective order to prevent annoyance, embarrassment, oppression, and undue burden or expense.  These are precisely the weapons that Plaintiff relies upon to secure settlements in these mass copyright infringement actions.  Indeed, as described by Judge Beeler in the Northern District of California,

> "once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand…the subscribers<u>, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle</u>…Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers."

*MCGIP v. Does 1-149,* No. C-11-02331, 2011 WL 4352110 at *4 (N.D. Cal., Sept. 16, 2011)(emphasis added).  See also *On the Cheap, LLC v. Does 1-5011,* No. 10-4472, 2011 WL 4018258, at *11 (N.D. Cal. Sept. 6, 2011)(stating that plaintiffs' settlement tactics leave defendants with "a decision to either accept plaintiff's demand or incur significant expense to defend themselves" and finding that this does not "comport with the 'principles of fundamental fairness'").

Malibu Media has recently faced similarly justified criticism in a scathing order out of the Central District of California that has been cited by both Judges Newman and Burrell in the Malibu Media matters described herein.  In *Malibu Media v. Does 1-10,* Judge Wright noted the following:

> **"C. The economics of pornographic copyright lawsuits**
>
> The court is familiar with lawsuits like this one.  These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many does will send back a nuisance-value check to the plaintiff.  The cost to plaintiff: a single filing fee, a bit of discovery, and stamps.  The rewards: potentially hundreds of thousands of dollars.  Rarely do these cases reach the

merits. **The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to a trial.** By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement – making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do so the old-fashioned way and earn it."

*Malibu Media, LLC v. John Does 1-10,* 2012 U.S. Dist. LEXIS 89286 at *8-9 (C.D. Cal. June 27, 2012)(emphasis added). Yet another court recognized that

> "[p]laintiff would likely send settlement demands to the individuals whom the ISP identified as the IP subscriber. 'That individual – whether guilty of copyright infringement or not- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the settlement demand. **This creates great potential for a coercive and unjust settlement.**'"

*SBO Pictures, Inc. v. Does 1-3036* 2011 WL 6002620 at *3 (quoting *Hard Drive Prods.,* 2011 WL 5573960 at *3)(emphasis added).

As outlined above, Movants herein will be subjected to annoyance, harassment, and undue burden and expense if this court does not grant the requested protected order or otherwise prohibit Plaintiff from obtaining Movants' identities. This court has the authority to issue a protective order, and Movants satisfy the Rule 26 standard for issuance of such an order. The misjoinder of Does 2-59 represents good cause for issuance of such an order and failure to obtain such order will subject Movants to annoyance, harassment, and undue burden an expense.

**2.    Alternatively, This Court Should Vacate Its Prior Order Because Plaintiff Has Not Met the Standard for Early Discovery and Cannot Show "Good Cause" as to Does 2-59**

Courts in the Ninth Circuit disfavor exceptions to the general rules of discovery *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)), a court will grant a motion for expedited discovery "upon a showing of good cause," *Am. Legalnet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal.2009) (quoting *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D.Cal. 2008)) (quotation marks omitted); accord *Semitool, Inc. v. Tokyo Electron Am., Inc.*,

208F.R.D. 273, 275 (N.D. Cal. 2002), **unless the court finds that discovery "would not uncover [the defendants'] identities**, or that the complaint would be dismissed on other grounds." Gillespie, 629F.2d at 642 (citations omitted)(emphasis added).

Good cause exists where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." The court must perform this evaluation in light of "the entirety of the record . . . and [examine] the reasonableness of the request in light of all the surrounding circumstances." *Semitool, Inc.*, 208 F.R.D. at 275 (citation & quotation marks omitted). The court must attempt to balance "the need to provide injured parties with an [sic] forum in which they may seek redress for grievances" against "the legitimate and valuable right to participate in online forums anonymously or pseudonymously . . . . without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co.*, 185 F.R.D. at 578; *see also London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 163, 179 (D. Mass. 2008) (stating that court must consider "the expectation of privacy held by the Doe defendants, as well as other innocent users who may be dragged into the case (for example, because they shared an IP address with an alleged infringer.)" (internal citation omitted)).

For the reasons described more fully below, Movants respectfully request that this court vacate its prior order authorizing early discovery because Plaintiffs have not satisfied the good cause standard for early discovery, nor is the requested discovery likely to identify the Doe Defendants.

A.   The Plaintiff has Not Satisfied the Good Cause Standard for Early Discovery as to Does 2-59.

As mentioned above, Judges Burrell and Newman have each recently denied discovery as to all Does except Doe #1 in several cases in this district. Rather than basing their decision solely on the issue of joinder, these judges took a slightly different route to the same destination. Specifically, each determined that "plaintiff has demonstrated good cause for some of the expedited discovery requested, but not all of it. Specifically, plaintiff has shown good cause to

conduct expedited discovery regarding the identity of one of the Doe Defendants, John Doe #1, but has not shown good cause to conduct expedited discovery regarding the other Doe defendants." See 2012 WL 2872835 at * 3 & 2012 WL 2800123 at * 3. Each reasoned that:

> "because plaintiff will be able to proceed with this action and with traditional discovery once it obtains the identity of John Doe #1, plaintiff has not shown that the need to discover the identities of all of the other Doe defendants at this early stage outweighs the prejudice to the responding ISPs and/or to those potentially innocent Doe defendants, or that the request to subpoena all of those individuals' ISPs is reasonable or supported by good cause, in light of the surrounding circumstances."

*Id.* at *4.

The reasoning above is compelling, and the court's concern regarding innocent account-holders is well-founded. Movants respectfully requests that this court adopt the reasoning of Judges Burrell and Newman and vacate its prior order authorizing early discovery as the requested discovery is not supported by good cause, in light of the surrounding circumstances.

B.   The Requested Discovery is Unlikely to Identify Doe Defendants

A Plaintiff must satisfy four requirements to be eligible for early discovery to identify Doe Defendants. These include the requirement that there be a reasonable likelihood that the requested discovery will lead to identification of the Doe Defendant. See *Colombia Ins. Co. v. Seescandy.com,* 185 F.R.D. 573, 580 (N.D. Cal. 1999). Plaintiff herein cannot satisfy that burden for the simple fact that the ISP subscriber is not necessarily the individual who downloaded/shared the copyrighted work, and the requested discovery alone is wholly insufficient to identify the actual infringer.

It is becoming accepted wisdom in District Courts across the country that an IP address does not equate to the infringer of a Plaintiff's copyright and that merely identifying the individual that pays the internet bill associated with a particular IP address does not identify the individual that infringed a copyright via that IP address. As the court in *SBO Pictures, Inc.* understood, "the ISP subscriber to whom a certain IP address was assigned may not be the same

person who used the internet connection for illicit purposes." *SBO Pictures, Inc.*, 2011 WL 6002620, at *3;  Another court correctly noted:

> "In its motion, Plaintiff redefines "Defendants" in a manner that would ensnare unknown numbers of innocent individuals or entities into this matter.  Tucked away in a footnote, Plaintiff discreetly attempts to expand "Defendants" for purposes of this expedited discovery request to encompass not only those who allegedly committed copyright infringement – proper defendants to Plaintiff's claims – but ISP "Subscriber(s)" over whose internet connection the Work allegedly was downloaded."

*Pacific Century International, Ltd., v. Does 1-101* No. C-11-02533, 2011 WL 5117424 at *2 (N.D. Cal. Oct. 27, 2011).

As Judge Baker noted in *VPR Internationale v. Does 1-1017,* 11-cv-02068-HAB-DGB, Dkt. No. 15 (C.D. Ill. 2011), obtaining subscriber identities will not "tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case.  It could be the Subscriber, or another member of the household, or any number of other individuals who had direct access to the Subscriber's network." *VPR Internationale* at pg. 2.

Indeed, another BitTorrent Plaintiff has admitted that the requested information is not likely to identify the actual infringer.   In Boy Racer v. Does 1-52, the presiding judge severed Does 2-52, but granted expedited discovery as to John Doe #1.  Plaintiff received precisely the ISP subscriber information regarding John Doe 1 as was requested herein.

As described by Judge Grewal:

> "To the court's surprise, in its filing and oral argument to the court, Boy Racer admitted that, its previous representations notwithstanding, the subpoenas were not sufficient to "fully identify" "each P2P network user suspected of violating the plaintiff's copyright."  Instead, it revealed for the first time that still more discovery was required.  **Boy Racer would require nothing less than an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and the computers of those sharing his network."**

*Boy Racer, Inc. v. Does 1-52,* 2011 WL 7402999 (N.D. Cal. 2011) (emphasis added).

As noted above, a court should deny early discovery when it will not lead to the identity of the Doe defendant.  Because the discovery requested by Plaintiff will only identify the ISP

subscriber and not the infringer the discovery is not likely to lead to the identity of the Doe Defendant or allow Plaintiff to effectuate service thereon. As such, Movants respectfully request that this court vacate its prior order authorizing early discovery .

### VI. Conclusion

Plaintiff herein has joined 59 totally unrelated individuals in this suit based solely on the allegation that they downloaded the same work through the same medium, though at vastly different times. Upon further investigation, however, it appears that the individuals herein are not even actually accused of downloading the same works – instead each is accused of downloading entirely separate movies on separate dates, with "Lunchtime Fantasy" only acting as an imaginary thread tying these defendants together. As recognized by multiple courts throughout this district, this state, and this country, mass joinder in the BitTorrent context is inappropriate. This represents good cause for entry of a protective order, preventing ISP Comcast Communications from divulging the names and other identifying information of Movants herein, and Does 2-59. If this court refuses to issue such an order, Movants will be subjected to embarrassment, harassment, annoyance, and the undue burden of what is, "essentially an extortion scheme."

Alternatively, this court could follow the lead of Magistrates Burrell and Newman, and vacate its prior order authorizing discovery as to Does 2-59 for failure to meet the 'good cause' standard for early discovery .

Respectfully Submitted,                                                                 July 19, 2012

__/S/ Nicholas Ranallo_____
COUNSEL FOR MOVANT (IP ADDRESS 24.7.173.114 & 98.224.125.211)
Nicholas Ranallo, Attorney at Law
California Bar # 275016
371 Dogwood Way,
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

## CERTIFICATE OF COMPLIANCE WITH FED.R.CIV.P. 26(C)(1) AND LOCAL RULE 251

I have conference with counsel for the opposing party in a good faith effort to resolve the issues raised in this Motion and we were unable to agree on a resolution of the motion.

By:   /s/Nicholas Ranallo

Nicholas Ranallo

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of July, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

By:   /s/Nicholas Ranallo

Nicholas Ranallo