1   Leemore Kushner (SBN 221969)
    KUSHNER LAW GROUP
2   801 North Citrus Avenue
    Los Angeles, California 90038
3   Telephone:  (323) 515-7894
    Facsimile:  (323) 544-8170
4   Email: lkushner@kushnerlawgroup.com

5   Attorneys for Plaintiff Malibu Media, LLC

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   MALIBU MEDIA, LLC, a California          Case No. 1:12-cv-00888-AWI-DLB
     limited liability company,
12                                            **OPPOSITION TO DOE 25'S
                    Plaintiff,                MOTION THAT THE COURT: (1)
13                                            RECONSIDER ITS ORDER
            v.                                GRANTING EARLY DISCOVERY;
14                                            (2) SEVER ALL JOHN DOS OTHER
     JOHN DOES 1 through 59,                  THAN JOHN DOE NO. 1; (3)
15                                            QUASH OUTSTANDING
                    Defendants.               SUBPOENAS; AND (4) ENTER A
16                                            PROTECTIVE ORDER**

17                                            Date:  September 21, 2012
                                              Time: 9:00 a.m.
18                                            Place: Ctrm 9

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION…………….....……………………..…………………….1

II.  DOE 25 FAILED TO MEET AND CONFER PRIOR TO THE FILING OF THIS
     MOTION …………………………………………………………….…….2

III. PLAINTIFF'S MOTION TO RECONSIDER SHOULD BE DENIED…………...3

    A. A Motion For Early Discovery to Seek the Identity of Unknown
       Defendants Will, By Its Nature, Be Unopposed…………………………3

    B. The Subpoena Seeks Relevant Information That Is Likely to Identify The
       Infringer………………………………………………………………3

    C. Plaintiff Has Every Intention of Litigating This Case…………………6

    D. Plaintiff Does Not Engage In Abusive Litigation Tactics………………...7

    E. The Subpoena Is Not Designed to Embarrass……………………………9

IV. JOINDER IS PROPER……………………………………………………10

    A. Plaintiff Has Met Rule 20's Requirements for Permissive Joinder……...11

        1.   Same Transaction, Occurrence or Series of Transactions………...11

            a.  Logical relationship test…………………………………11

            b.  Plaintiff properly pled a series of transactions……………14

            c.  It is not necessary for the Defendants to know each other…15

        2.   There are common issues of fact and law…………………………17

        3.   The Time Lapse Is Irrelevant……………………………………18

    B. Joinder Is Proper Because Each Defendant Is Jointly and Severally
       Liable………………………………………………………………20

    C. Joinder Promotes Judicial Efficiency And Is Not Prejudicial To The
       Putative Defendants………………………………………………...21

    D. This Court Has Already Ruled That Joinder Is Proper.…………………23

    E. California Courts Agree That Joinder Is Proper…………………………23

V.  A PROTECTIVE ORDER SHOULD NOT BE ISSUED…………………………...24

VI. CONCLUSION……………………………………………...…………………………25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acciard v. Whitney*
  2008 WL 5120820 (M.D. Fla. Dec. 4, 2008)............................................................16

*Adobe Systems, Inc. v. Canus Productions, Inc.,*
  173 F.Supp.2d 1044, 1055 (C.D. Cal. 2001) ..........................................................21

*AF Holdings LLC v. Does 1-1,058*
  -- F.Supp.2d --, 2012 WL 3204917 at *13 (D.D.C. August 6, 2012)............19, 21, 22

*AF Holdings, LLC v. Does 1-162,*
  2012 WL 488217 (S.D.Fla. Feb. 14, 2012) ..............................................................9

*Alexander v. Fulton County, Ga.,*
  207 F.3d 1303 (11th Cir. 2000) ..............................................................................18

*Arista Records, LLC v. Does 1-19,*
  551 F.Supp.2d 1, 11 (D.D.C. 2008)........................................................................15

*Berlin Media Art E.K. v. Does 1-144,*
  2011 WL 4056167 (E.D. CA. 2011)........................................................................24

*Bravado Int'l Group Merch. Servs. v. Cha,*
  2010 WL 2650432 at *4 (C.D.Cal. June 30, 2010) ................................................11

*Call of the Wild Movie v. Does 1-1062,*
  770 F.Supp.2d 332, 343 (D.D.C. 2011)...........................................................*passim*

*Charter Communications, Inc., Subpoena Enforcement Matter,*
  393 F.3d 771, 775 n. 3 (8th Cir. 2005) ....................................................................1

*Carroll v. Nakatani*
  342 F.3d 934, 945 (9th Cir. 2003) ..........................................................................3

*Costar Group, Inc. v. Loopnet, Inc.,*
  164 F. Supp.2d 688, 696 (M.D. 2001)....................................................................20

*Disparte v. Corp. Exec. Bd.,*
  223 F.R.D. 7, 10 (D.D.C. 2004) .................................................................................. 15

*Donkeyball Movie, LLC v. Does,*
  810 F.Supp.2d 20, 26 (D.D.C. 2011) ........................................................................... 25

*First Time Videos, LLC v. Does 1-76,*
  2011 WL 3586245 (N.D. Ill. 2011) ............................................................................. 10

*First Time Videos, LLC v. Does 1-95,*
  2011 WL 4724882 at *6 (N.D.Cal. Oct. 7, 2011) ....................................................... 19

*Gillespie v. Civiletti*
  629 F.2d 637, 642 (9th Cir. 1980). .................................................................................. 3

*Gulf Oil Company v. Bernard*
  452 U.S.89, 102 n.16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) .............................. 24

*Hard Drive Productions, Inc. v. Does 1–46,*
  2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011) ........................................................ 24

*In re Bittorrent Adult Film Copyright Infringement Cases*
  2012 WL 1570765 (E.D.N.Y. June 12, 2012) ............................................................. 8

*Jartech, Inc. v. Clancy*
  666 F.2d 403, 406 (9th Cir. 1982) ................................................................................... 9

*Kamakana v. City and County of Honolulu*
  447 F.3d 1172, 1179 (9th Cir. 2006) ........................................................................... 9

*Kedra v. City of Philadelphia,*
  454 F. Supp. 652, 662 (E.D. Pa. 1978) ........................................................................ 19

*Kona Enterprises, Inc. v. Estate of Bishop,*
  229 F.3d 877, 890 (9th Cir. 2000) ................................................................................... 3

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency,*
  558 F.2d 914, 917 (9th Cir. 1997) .................................................................................. 11

*Liberty Media Holdings, LLC v. Does 1-62,*
  2012 WL 628309 (S.D.Cal. Feb. 24, 2012) ........................................................*passim*

*Malibu Media, LLC v. Does 1-14*,
   Civ. Action No. 12-00764 (BAH), Docket 14 (D.D.C. July 25, 2012) ......................2

*Malibu Media, LLC v. Does 1-9*,
   Case No. 8:12-cv-00669-SDM-AEP, Docket no. 25 at p. 7 (M.D.Fla. July 6, 2012).8

*Malibu Media, LLC v. Does 1-13*,
   2012 WL 2325588 (E.D.N.Y. June 19, 2012) ........................................................8

*Malibu Media, LLC v. Does 1-10*,
   Case No. CV12-1647 JAK, Docket No. 22 (C.D.Cal. June 4, 2012) ......................10

*Malibu Media, LLC v. Does 1-25*,
   2012 WL 2367555 at *3 (S.D.Cal. June 21, 2012)................................................25

*Marek v. Chesny*
   473 U.S. 1, 11 (1985)..............................................................................................8

*Marobie-FL, Inc. v. National Ass'n of Fire Equipment Distributors*,
   983 F. Supp. 1167 (N.D. IL 1997) .........................................................................21

*Milgard Tempering v. Selas Corp. of Am.*,
   902 F.2d 703, 715 (9th Cir. 1990) .........................................................................23

*Mitchell Bros. Film Group v. Cinema Adult Theater*
   604 F.2d 852 (5th Cir. 1979) ...................................................................................8

*Mosley v. Gen. Motors Corp.*
   497 F.2d 1330, 1332 (8th Cir. 1974) ................................................................11, 12

*Murdoch v. Castro*
   489 F.3d 1063, 1067-68 (9th Cir. 2007)................................................................23

*New Sensations, Inc. v. Does 1-1,474*,
   2011 WL 4407222, (N.D.Cal. 2011) ....................................................................24

*New Sensations, Inc. v. Does 1745*,
   2011 WL 2837610 (N.D.Cal. 2011) .....................................................................24

*OpenMind Solutions, Inc. v. Does 1-39*,
   2011 WL 4715200 (N.D. Cal. 2011) ...............................................................*passim*

*Patrick Collins, Inc. v. John Does 1-54*
　　2012 WL 911432, at *4 (D.Ariz. Mar.19, 2012) ....................................7, 9

*Patrick Collins, Inc. v. John Does 1-21,*
　　2012 WL 1190840 (E.D. Mich. Apr. 5, 2012) ...........................13, 14, 18

*Patrick Collins, Inc. v. John Does 34-51,*
　　2012 WL 871269 (S.D.Cal. March 14, 2012) ....................................10

*Patrick Collins, Inc. v. John Does 1-2590,*
　　2011 WL 4407172 (N.D.Cal. 2011) ....................................12, 24

*Raw Films, Ltd. v. John Does 1-15,*
　　2012 WL 1019067 (E.D. Pa. Mar. 26, 2012)  ....................................4

*Recording Indus. Ass'n of Am. v. Verizon Internet Servs., Inc.,*
　　351 F.3d 1229, 1232 (D.C. Cir. 2003)....................................1

*Sony v. Tenenbaum*
　　660 F.3d 487, 500-01 (1st Cir. 2011) ....................................2

*Sosa v. DirectTV*
　　437 F. 3d 923, 937 (9th Cir. 2006) ....................................8

*Third Degree Films v. Does 1-36*
　　2012 WL 2522151 (E.D.Mich. May 29, 2012) ....................................7, 10

*Third Degree Films, Inc. v. Does 1-178*
　　Case No. C12-3858 MEJ, 2012 WL 3763649 (N.D.Cal. Aug. 29, 2012)..........10, 23

*United Mine Workers of Am. v. Gibbs*,
　　383 U.S. 715, 724 (1966)....................................11, 16

*United States v. Mississippi*
　　380 U.S. 128 (1965)....................................16

*Voltage Pictures, LLC v. Does 1-5000,*
　　818 F.Supp.2d 28, 35 (D.D.C. 2011) ....................................9

1

**Statutes**

2

17 USC § 106 ................................................................................................20

3

4

**Rules**

5

Fed. R. Civ. P. 20 ....................................................................11, 17, 23

6

Fed. R. Civ. P. 26 ...........................................................................4, 24

7

8

Fed. R. Civ. P. 59 ..............................................................................3

9

E.D. Local Rule 251 .......................................................................1, 2

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Eastern District Local Rule 251 provides that a motion shall not be heard unless counsel has previously met and conferred concerning all disputed issues.  E.D. Local Rule 251(b).  Defendant John Doe 25 ("Doe 25" or "Defendant") filed his or her motion without attempting to meet and confer with counsel for Plaintiff, and this motion should be denied on that basis alone.

In addition, Doe 25 has not articulated any valid basis for this Court to reconsider its motion for early discovery, and the motion is merely an attempt to divert the Court's attention from his or her digital theft by casting Plaintiff in a negative light because of Plaintiff's effort to protect its copyright through this and other similar lawsuits.  At this stage of the litigation, Plaintiff has no option but to file suit against the owners of IP addresses to obtain the infringers' identities.  Indeed, as a practical matter, "copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 775 n. 3 (8th Cir. 2005).[1]  "By filing this lawsuit against unknown putative defendants and using the subpoena power to learn the identity of internet service customers who infringe, copyright owners are able to take steps to protect their interests, seek compensation

---

[1] The Court of Appeals for the Eighth Circuit reversed the lower court's allowance of a subpoena issued under section 512(h) of the Digital Millennium Copyright Act (DMCA) to a cable operator that provided conduit service used by its subscribers to download copyrighted material over peer-to-peer networks, finding that such subpoena authority only applied when the ISP stored the infringing material on its network (rather than on the customer's computer). *Accord Recording Indus. Ass'n of Am. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1232 (D.C. Cir. 2003). The Eighth Circuit acknowledged that without this DMCA subpoena tool to discover the identity of the alleged infringer, "organizations . . . can also employ alternative avenues to seek this information, such as 'John Doe' lawsuits. In such lawsuits, many of which are now pending in district courts across the country, organizations . . . can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant." *In re Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d at 775 n.3.

1  for their misappropriated property, and stop infringement." *Malibu Media, LLC v.*

2  *John Does 1-14*, Civ. Action No. 12-00764 (BAH), Docket 14 (D.D.C. July 25,

3  2012).

4        To quash Plaintiff's subpoena pursuant to the instant motion would effectively

5  leave Plaintiff with no recourse against the mass copyright infringement it suffers on

6  a daily basis.  Any such holding is contrary to existing law and the express policy of

7  Congress.  In 1999, Congress intentionally amended the Copyright Act to deter

8  individuals from online infringement by increasing statutory remedies:

9  
10  
11  
12  
13  
14  
15  
16  

> Congress did contemplate that suits like this [against individuals] were
> within the Act. Congress last amended the Copyright Act in 1999 *to
> increase the minimum and maximum awards available under § 504(c)*.
> *See* Digital Theft Deterrence and Copyright Damages Improvement
> Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774. At the time,
> Congress specifically acknowledged that *consumer-based,
> noncommercial use of copyrighted materials constituted actionable
> copyright infringement*. Congress found that 'copyright piracy of
> intellectual property flourishes, assisted in large part by today's world
> of advanced technologies,' and cautioned that 'the potential for this
> problem to worsen is great.'

17  *Sony v. Tenenbaum*, 660 F.3d 487, 500-01 (1st Cir. 2011) (emphasis added) (noting

18  that the legislative history of the Copyright Act addresses the concern of online

19  piracy).

20        As discussed in more detail below, Doe 25's Motion does not provide the

21  Court with any sufficient basis to reconsider the Court's order authorizing early

22  discovery, to quash the subpoena, or to sever the case.

23  II.    **DOE 25 FAILED TO MEET AND CONFER PRIOR TO THE FILING**

24         **OF THIS MOTION**

25        Eastern District Local Rule 251 provides that a motion made pursuant to Rules

26  26 through 37 of the Federal Rules of Civil Procedure, "**shall not be heard**" unless

27  the parties have conferred and attempted to resolve their differences.  E.D. Local

28  

---

2

1  Rule 251(b).  Here, Doe 25's counsel made no attempt to meet and confer with

2  Plaintiff's counsel about the substance of this motion.  Declaration of Leemore

3  Kushner, ¶ 2.  Doe 25's motion should be denied on this basis alone.

4

5  **III.   PLAINTIFF'S MOTION TO RECONSIDER SHOULD BE DENIED**

6      Although Rule 59(e) of the Federal Rules of Civil Procedure permits a district

7  court to reconsider and amend a previous order, reconsideration is an "extraordinary

8  remedy, to be used sparingly…."  *Kona Enterprises, Inc. v. Estate of Bishop*, 229

9  F.3d 877, 890 (9th Cir. 2000); *see also, Carroll v. Nakatani*, 342 F.3d 934, 945 (9th

10 Cir. 2003).  Thus, absent highly unusual circumstances, a motion for reconsideration

11 should not be granted "unless the district court is presented with *newly discovered*

12 *evidence, committed clear error, or if there is an intervening change in the*

13 *controlling law*." *Id*. (emphasis added; internal quotes omitted).  Here, Defendant has

14 not presented the Court with any new facts or evidence that merit a reconsideration of

15 the Court's order granting early discovery.  Plaintiff addresses below each of

16 Defendant's purported basis for his or her motion.

17      **A.   A Motion For Early Discovery to Seek the Identity of Unknown**

18           **Defendants Will, By Its Nature, Be Unopposed**

19      First, Defendant argues that the Court should reconsider its prior Order because

20 the Doe defendants did not have an opportunity to oppose the motion for early

21 discovery.  That, however, does not justify reconsideration.  Indeed, motions for early

22 discovery in order to seek the identity of fictitiously named defendants will, by their

23 very nature, be unopposed.  The Ninth Circuit has expressly authorized this method

24 of discovery under appropriate circumstances.  *See Gillespie v. Civiletti*, 629 F.2d

25 637, 642 (9th Cir. 1980).

26      **B.   The Subpoena Seeks Relevant Information That Is Likely To**

27           **Identify The Infringer**

28                                    3

Second, Defendant argues that the subpoena does not seek relevant information because it is not likely to reveal the identities of the Doe defendants.  To the contrary, even if Defendant is not the actual infringer, the information sought is still relevant and discoverable.  Indeed, Rule 26 of the Federal Rules of Civil Procedure defines the scope of discovery as including "any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things *and the identity of the location or persons who know of any discoverable matter*."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

The information sought by Plaintiff – namely, information sufficient to identify the Doe defendants – falls squarely within the broad scope of discovery and is therefore warranted in this matter. The identity of the IP address holder is relevant under Rule 26, in that it is "reasonably calculated" to lead to the identity of the infringer, whether it is the IP address holder or some other individual. Thus, any concern about identifying a potentially innocent ISP customer, who happens to fall within the Plaintiff's discovery requests upon the ISPs, is minimal and not an issue that should warrant the Court to minimize or even prohibit the otherwise legitimate, relevant, and probative discovery.

The Eastern District of Pennsylvania court recently discussed whether an IP address was sufficient to identify the infringer:

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.

*Raw Films, Ltd. V. John Does 1-15*, 2012 WL 1019067 (E.D.Pa. Mar. 26, 2012)

4

1   (internal citations omitted).  The Court went on to note that while the IP address did

2   not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to

3   give rise to a reasonable likelihood that information facilitating service upon proper

4   defendants will be disclosed if the ISPs comply."  *Id.*

5        Defendant relies heavily on Judge Brown's opinion in *In re Adult Film Cases*

6   in the Eastern District of New York, where Judge Brown questioned the likelihood

7   that the infringer was the owner of the IP address.  Plaintiff respectfully disagrees

8   with Judge Brown's opinion, particularly in light of the fact that recent

9   technological advances make it more likely that a wireless account will be secured

10  and can easily be traced to a household where the subscriber either is the infringer or

11  knows the infringer.  Recently, PC Magazine published an article regarding the

12  scarcity of open wireless signals, stating: "These days, you are lucky to find one in

13  100 Wi-Fi connections that are not protected by passwords of some sort."[2]  The

14  author explains why routers are now more likely to be secured.  "The reason for the

15  change is simple: the router manufacturers decided to make users employ security

16  with the set-up software.  As people upgrade to newer, faster routers, the wide-open

17  WiFi golden era came to an end."[3]  This article, published on March 26, 2012, runs

18  contrary to Judge Brown's assertions and supports the idea that most households do

19  have closed, protected wireless that are not likely to be used by a neighbor or

20  interloper.

21        Furthermore, Plaintiff uses the same process as Federal Law Enforcement to

22  identify cyber crimes.  In a Statement of Deputy Assistant Attorney General Jason

23  Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he

24  discusses how Federal law enforcement use IP addresses to identify an individual.

---

25  [2] *See Free Wi-Fi is Gone Forever*, www.pcmag.com/article2/0,2817,2402137,00.asp

26  [3] *Id.*

27

28                                          5

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[4]

The information sought by Plaintiff falls squarely within the broad scope of discovery and is therefore warranted in this matter. The identity of the IP address holder is relevant under Rule 26, in that it is "reasonably calculated" to lead to the identity of the infringer, whether it is the IP address holder or some other individual. Thus, any concern about identifying a potentially innocent ISP customer, who happens to fall within the Plaintiff's discovery requests upon the ISPs, is minimal and not an issue that should warrant the Court to minimize or even prohibit the otherwise legitimate, relevant, and probative discovery.

## C.     **Plaintiff Has Every Intention of Litigating This Case**

Defendant erroneously suggests that Plaintiff has no intention of actually litigating the case and that "no defendant has ever been served in one of these mass copyright cases." Motion, p.9. Defendant is wrong. Plaintiff has sued numerous individual defendants for copyright infringement in courts throughout the country, and has every intention of litigating this case as well. *See, e.g., Malibu Media LLC v. Southgate*, 3:12-cv-00369-DMS-WMC (S.D.Cal.); *Malibu Media, LLC v. Abrahimzadez*, 1:12-cv-01200-ESH (D.D.C.); *Malibu Media LLC v. Bochnak*, 1:12-cv-07030 (N.D.Ill.); *Malibu Media LLC v. Siembida*, 1:12-cv-07031 (N.D.Ill.); *Malibu Media LLC v. Vancamp*, 2:12-cv-13887-PDB-DRG (E.D.Mich.); *Malibu Media LLC v. Fantalis*, 1:12-cv-00886-MEH (D.Colo.); *Malibu Media LLC v. Xu*,

---

[4] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

1   1:12-cv-1866-MSK-MEH (D.Colo.); *Malibu Media LLC v. Allison*, 1:12-cv-1867-

2   MSK-MEH (D.Colo.); *Malibu Media LLC v. Ramsey*, 1:12-cv-1868-MSK-MEH

3   (D.Colo.); *Malibu Media LLC v. Tipton*, 1:12-cv-1869-MSK-MEH (D.Colo.); *Malibu*

4   *Media LLC v. Kahrs*, 1:12-cv-1870-MSK-MEH (D.Colo.); *Malibu Media LLC v.*

5   *Domindo*, 1:12-cv-1871-MSK-MEH (D.Colo.); *Malibu Media LLC v. Peng*, 1:12-cv-

6   1872-MSK-MEH (D.Colo.); *Malibu Media LLC v. Maness*, 1:12-cv-1873-MSK-

7   MEH (D.Colo.); *Malibu Media LLC v. Nelson*, 1:12-cv-1875-MSK-MEH (D.Colo.);

8   *Malibu Media LLC v. Geary*, 1:12-cv-1876-MSK-MEH (D.Colo.); *Malibu Media*

9   *LLC v. Detweiler*, 2:12-cv-4253-ER (E.D.Pa.); *Malibu Media LLC v. Johnston*, 2:12-

10  cv-4200-JHS (E.D.Pa.).

11  **D.     Plaintiff Does Not Engage In Abusive Litigation Tactics**

12          Without any factual support whatsoever, Defendant contends that Plaintiff is

13  engaged in abusive litigation tactics to coerce settlements. Defendant is attempting

14  to influence this Court to make a decision based on accusations in other cases

15  involving other counsel and other plaintiffs.  Indeed, Defendant cites to cases that

16  can only refer to vague, anecdotal accusations of improper settlement tactics.  These

17  erroneous conclusions are propagated by anti-copyright blogs as a suggested defense

18  strategy.  While Defendant goes to substantial effort to decry Plaintiff's purpose and

19  settlement attempts, Defendant has not – and cannot – provide one specific example

20  of Plaintiff improperly holding a defendant to account.

21          The District of Arizona aptly concluded in a case similar to this that "[t]he

22  likelihood that [Defendant] will be subject to such tactics is minimal here; the Court

23  will not conclude based on the tactics of other lawsuits in other districts that this suit

24  was brought for a purely improper purpose." *Patrick Collins, Inc. v. Does 1-54*,

25  2012 WL 911432 (D.Ariz. Mar. 19, 2012); *see also, Third Degree Films v. Does 1-*

26  *36,* 2012 WL 2522151 (E.D.Mich. May 29, 2012) ("To the extent that it is

27  independent, the Court notes that while Defendant claims that this suit was brought

28                                          7

1   only to scare up settlements [Citation], Defendant has offered no case-specific facts

2   supporting this claim. Rather, Defendant relies on the conduct of adult-film

3   companies in other cases. *This guilt-by-association argument does not justify*

4   *quashing the subpoena that this Plaintiff, Third Degree Films, served on*

5   *Defendant's ISP* pursuant to an Order entered by Judge Murphy allowing this

6   discovery." (emphasis added)).

7          Defendant's criticism of Plaintiff's attempt to settle its disputes with the doe

8   defendants prior to naming and serving them with process is unfounded and

9   unsupported, and "is simply without any merit in those cases where the John Doe

10   Defendant is represented by counsel." *Malibu Media, LLC v. John Does 1-9*, Case

11   No. 8:12-cv-00669-SDM-AEP, Docket no. 25 at p. 7 (M.D.Fla. July 6, 2012).

12   Indeed, such settlement demands are routinely made by most – if not all – plaintiffs

13   prior to the filing of a lawsuit, and are in line with the well-established public policy

14   favoring resolution through settlements.  *Marek v. Chesny*, 473 U.S. 1, 11 (1985)

15   ("Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs

16   nor defendants; it expresses a clear policy of favoring settlement of all lawsuits.").

17   Moreover, Plaintiff has a First Amendment right under the petition clause to make a

18   settlement demand.  *See Sosa v. DirectTV*, 437 F. 3d 923, 937 (9th Cir. 2006)

19   (holding "the protections of the Petition Clause extend to settlement demands as a

20   class," including those made during and prior to a suit.). The only difference between

21   this case and the countless others filed every day by other plaintiffs in a broad array

22   of civil litigation is that the Plaintiff does not have the ability to identify the

23   defendants before the suit is filed.[5]

24   _____

25   [5] Defendant's numerous references to the May 1, 2012 decision by Judge Gary R. Brown of the
    Eastern District of New York, *In re Bittorrent Adult Film Copyright Infringement Cases*, 2012
26   WL 1570765 (E.D.N.Y. June 12, 2012), is unpersuasive.  Indeed, just one month after Judge
    Brown issued his opinion therein, Judge E. Thomas Boyle of the same court in the Eastern District
27   of New York, reached the opposite result in *Malibu Media, LLC v. John Does 1-13*, 2012 WL
    (footnote continued)

28                                         8

1    In sum, Defendant has not offered any proof – because there is none – that

2  Plaintiff (or its counsel) has engaged in any abusive litigation tactics.  His or her

3  motion should be denied.

4        **E.    The Subpoena Is Not Designed to Embarrass**

5    Though not explicitly stated, Defendant suggests that this lawsuit and the

6  resulting subpoena are designed to embarrass the Doe defendants.  Courts, however,

7  have overwhelmingly found that this is an insufficient basis to quash a subpoena or

8  issue a protective order.  *See Kamakana v. City and County of Honolulu,* 447 F.3d

9  1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to

10  a litigant's embarrassment, incrimination, or exposure to further litigation will not,

11  without more, compel the court to seal its records."); *Voltage Pictures, LLC v. Does*

12  *1-5,000*, 818 F.Supp.2d 28, 35 (D.D.C. 2011) ("To the extent that the putative

13  defendants seek protective orders to prevent disclosure of private identifying

14  information, the Court has held that the putative defendants' First Amendment rights

15  to anonymity in the context of their BitTorrent activity is minimal and outweighed by

16  the plaintiff's need for the putative defendants' identifying information in order to

17  protect its copyrights.") *see also, Patrick Collins, Inc.,*  2012 WL 911432, at *4

18  ("Although the Court acknowledges that there is some social stigma attached to

19

20

21  2325588 (E.D.N.Y. June 19, 2012) ("*Malibu Media*"), finding in a case similar to this that joinder is proper, and denying a Doe defendant's motion to quash the subpoena.  Significantly, Judge Brown's decision in *In re Bittorrent* was decided *ex parte* and without a hearing whereas Judge Boyle's decision in *Malibu Media* was made following an hour-long hearing with counsel for Plaintiff wherein, among other things, Plaintiff argued that the bias against it exhibited in Judge Boyle's decision does not belong in a federal courthouse, particularly in light of the Fifth Circuit's well-reasoned decision in *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852 (5th Cir. 1979), which held that the copyright statute contains no explicit or implicit bar to copyrighting obscene materials and provides for a copyright of all creative works, obscene or nonobscene, that otherwise meet the requirements of the Copyright Act. *See also, Jartech, Inc. v. Clancy*, 666 F.2d 403, 406 (9th Cir. 1982) ("Acceptance of an obscenity defense [to copyright laws] would fragment copyright enforcement, protecting registered materials in a certain community, while, in effect, authorizing pirating in another locale.")

22

23

24

25

26

27

28

9

1    consuming pornography, Defendant strenuously denies the allegations, and it is the

2    rare civil lawsuit in which a defendant is not accused of behavior of which others

3    may disapprove. The nature of the allegations alone do not merit a protective

4    order."); *AF Holdings, LLC v. Does 1-62*, 2012 WL 488217 at *1 (S.D.Fla. Feb. 14,

5    2012); *Third Degree Films*, 2012 WL 2522151 (denying defendant's request for

6    protective order permitting anonymous participation in the lawsuit).

7    **IV.   JOINDER IS PROPER**[6]

8           Joinder in BitTorrent copyright infringement cases has been thoroughly

9    analyzed in many opinions and has been permitted where, as here: (a) the complaint

10   clearly explains how BitTorrent works through a series of transactions, (b) all of the

11   defendants live in the district (eliminating personal jurisdiction and venue issues), (c)

12   all of the defendants were part of the same exact swarm of peer infringers as

13   evidenced by a unique cryptographic hash value, and (d) Plaintiff pled that the

14   Defendants are contributorily liable for each other's infringement. *See First Time*

15   *Videos, LLC v. Does 1-76*, 2011 WL 3586245 (N.D. Ill. 2011) (stating that "the

16   overwhelming majority of courts have denied as premature motions to sever prior to

17   discovery"). Numerous courts in California have held that joinder is proper in similar

18   BitTorrent copyright infringement cases.  *See, e.g., Third Degree Films, Inc. v. Does*

19   *1-178*, Case No. C12-3858 MEJ, 2012 WL 3763649 (N.D.Cal. Aug. 29, 2012);

20   *Malibu Media, LLC v. John Does 1-10*, Case No. CV12-1647 JAK, Docket No. 22

21   (C.D.Cal. June 4, 2012); *Patrick Collins, Inc. v. John Does 34-51*, 2012 WL 871269

22   at * 1 (S.D.Cal. March 14, 2012) (rejecting the argument that joinder is improper on

23

24   ─────────────────

25   [6]   There are four motions to quash and/or for protective order pending before this Court,
     including the instant motion. [Dockets 6, 8, 10, 15.]  Each motion raises the issue of severance and
26   whether the Doe defendants are properly joined in this case.  Plaintiff's response thereto will be
     addressed in full in this brief, and is incorporated by reference into the opposition briefs that
27   Plaintiff will be filing herewith.

28                                              10

1    the grounds that "[b]y its terms, Rule 45(c)(3) does not provide authority for a court

2    to modify or quash a subpoena on the grounds of misjoinder."); *Liberty Media*

3    *Holdings, LLC v. Does 1-*62, 2012 WL 628309 (S.D.Cal. Feb. 24, 2012); *OpenMind*

4    *Solutions, Inc. v. Does 1-39*, 2011 WL 4715200 (N.D.Cal. Oct. 7, 2011) (finding that

5    Plaintiff met the permissive joinder requirements and under Rule 20(a)(2)).

6             **A.**     **Plaintiff Has Met Rule 20's Requirements for Permissive Joinder.**

7           Under Rule 20, defendants may be joined in one action when claims arise from

8    the same transaction or occurrence or series of transactions or occurrences, and any

9    question of law or fact in the action is common to all defendants.  Fed. R. Civ. P.

10   20(a)(2). The permissive joinder rule "is to be construed liberally in order to promote

11   trial convenience and to expedite the final determination of disputes, thereby

12   preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning*

13   *Agency*, 558 F.2d 914, 917 (9th Cir. 1997).  The purpose of Rule 20(a) is to address

14   the "broadest possible scope of action consistent with fairness to the parties; joinder

15   of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am.*

16   *v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Mosley v. Gen.*

17   *Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974); *Liberty Media Holdings*, 2012

18   WL 628309 at *7 ("Rule 20(a) is designed to promote judicial economy and trial

19   convenience.").

20          Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right

21   to relief must be asserted by, or against, each plaintiff or defendant relating to or

22   arising out of the same transaction or occurrence, and (2) some question of law or

23   fact common to all the parties must arise in the action.  Fed. R. Civ. P. 20(a)(2).  As

24   discussed below, this case meets both requirements.

25            **1.**     **Same Transaction, Occurrence or Series of Transactions.**

26               a.     Logical relationship test.

27       "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or

28                   11

1   series of transactions or occurrences' to require a degree of factual commonality

2   underlying the claims." *Bravado Int'l Group Merch. Servs. v. Cha*, 2010 WL

3   2650432 at *4 (C.D.Cal. June 30, 2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348,

4   1350 (9th Cir. 1997)).  Typically, this means that a party "must assert rights…that

5   arise from related activities – a transaction or an occurrence or a series thereof." *Id.*

6   (citation omitted).  Courts across the country use the "logical relationship" test to

7   ascertain whether the right to relief arises out of the same transaction of series of

8   transactions:

9
10
11
> "'Transaction' is a word of flexible meaning.  *It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship*." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371 (1926).  Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. [Citation.]  The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. *Absolute identity of all events is unnecessary.*
12
13
14
15
16

17   *Mosley*, 497 F.2d 1330. The logical relationship test has been consistently used in

18   decisions concerning BitTorrent copyright infringement in suits across the country,

19   and courts have routinely held that joinder is proper in BitTorrent actions because

20   of the unique nature of BitTorrent technology.  *See, e.g., Patrick Collins, Inc. v.*

21   *John Does 1-2590*, 2011 WL 4407172 at *6 (N.D.Cal. 2011); *OpenMind Solutions,*

22   *Inc.*, 2011 WL 4715200, *6; *Call of the Wild Movie v. Does 1-1062*, 770 F.Supp.2d

23   332, 343 (D.D.C. 2011).

24       As the Southern District of California recently held:

25
26
27
28
> Cases involving BitTorrent technology raise a new and distinct method of alleged copyright infringement that was not possible with the earlier P2P technology, mainly that BitTorent users collectively share the same exact file by each contributing a small piece of the file to the user

12

downloading the file.  Furthermore, unlike the earlier P2P technology, the BitTorrent file-sharing protocol makes every downloader also an uploader of the illegally transferred file.  This distinguishes BitTorrent cases from the earlier P2P cases.  Given this unique theory of copyright infringement, it is possible that BitTorrent users identified with the alleged illegal sharing of the same file are 'logically related' and are 'acting in concert.'

*Liberty Media Holdings*, 2012 WL 628309 at *7.

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near-identical case, expanding substantial effort to understand the allegations in the complaint and the applicable law:

Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant [Citation]. It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie.

By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

*Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012). Judge Randon then explained through the force of clear deductive logic that each Defendant obtained the piece of Plaintiff's movie in one of four ways, all of which relate directly back to one individual seed.

If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:

13

> 1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or
>
> 2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or
>
> 3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or
>
> 4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.
>
> In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

*Id.*  Having limited the universe to four possibilities the court correctly concluded the transaction was logically related:

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

*Id.*  In other words, by causing *all* users to distribute the file, BitTorrent ensures that all peers in a swarm materially aid every other peer.  This critical fact makes BitTorrent different than every other peer-to-peer network, and is one important distinguishing factor that renders joinder proper herein.

> b.    Plaintiff properly pled a series of transactions.

With respect to the particular swarm at issue here, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remained

14

1  the same within the swarm. Complaint, ¶¶ 40-44. Further, the alleged infringers all

2  participated in the same exact swarm and downloaded the same exact copyrighted

3  file. Declaration of Tobias Fieser in Support of Plaintiff's Motion for Leave to

4  Serve a Subpoena Prior to a Rule 26(f) Conference [Dkt No. 4-1], ¶¶ 19-20. Even

5  after a Doe defendant disconnects from the swarm, the parts of the file that he or

6  she downloaded and uploaded will continue to be transferred to the other Doe

7  defendants remaining in the swarm. *See OpenMind Solutions*, 2011 WL 4715200

8  at*6 (finding that Plaintiff provided enough specificity to make a preliminary

9  determination that the doe defendants were part of the same swarm and holding that

10  "Plaintiff's claims against Defendants appear logically related").

11  Simply, here, each putative Defendant is a possible source for Plaintiff's

12  copyrighted work, and is responsible for distributing the work to the other putative

13  defendants, who are also using the same BitTorrent technology to copy the identical

14  copyrighted material. *See Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C.

15  2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and this test is

16  "flexible."). While Defendants may be able to rebut these allegations later, Plaintiff

17  has sufficiently alleged that its claims against Defendants stem from the same

18  transaction or occurrence, and are logically related. *See Arista Records, LLC v.*

19  *Does 1-19*. 551 F.Supp.2d 1, 11 (D.D.C. 2008) ("While the Court notes that the

20  remedy for improper joinder is severance and not dismissal, … the Court also finds

21  that this inquiry is premature without first knowing Defendants' identities and the

22  actual facts and circumstances associated with Defendants' conduct.").  Indeed,

23  Exhibit A to the Complaint reflects that each of the Doe defendants herein were

24  present in the same swarm on BitTorrent and shared pieces of the same seed files.

25  Moreover, while the logical relationship test does not require it, should this

26  matter go trial, Plaintiff will prove that the Defendants' infringement was committed

27  through the same transaction or through a series of transactions with mathematical

28

15

1  certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent

2  Trackers would have caused the entire series of transactions to be different *but for*

3  each of the Defendants' infringements.

4             c.      It is not necessary for the Defendants to know each other.

5        The contention that all defendants must have a direct connection to the other

6  is a rigid approach to joinder and contrary to Supreme Court precedent. "Under the

7  Rules, the impulse is toward entertaining the broadest possible scope of action

8  consistent with fairness to the parties; joinder of claims, parties and remedies is

9  strongly encouraged." *United Mine Workers*, 383 U.S. at 724. "The touchstone of

10  Rule 20 joinder/severance analysis is whether the interests of efficiency and judicial

11  economy would be advanced by allowing the claims to travel together, and whether

12  any party would be prejudiced if they did." *Acciard v. Whitney*, 2008 WL 5120820

13  (M.D. Fla. Dec. 4, 2008). In *United States v. Mississippi*, 380 U.S. 128 (1965), the

14  Supreme Court found that the joinder of six defendants, election registrars of six

15  different counties, was proper because the allegations were all based on the same

16  state-wide system designed to enforce the voter registration laws in a way that

17  would deprive African Americans of the right to vote. Although the complaint did

18  not allege that the registrars acted in concert with each other, or even that they knew

19  of each other's actions, or that each other's actions directly affected each other in

20  any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally

21  because the series of transactions were related and contained a common issue of law

22  and fact. *Id.* at 142-143.

23        [T]he complaint charged that the registrars had acted and were

24        continuing to act as part of a state-wide system designed to enforce the
      registration laws in a way that would inevitably deprive colored people

25        of the right to vote solely because of their color. On such an allegation

26        the joinder of all the registrars as defendants in a single suit is

27        authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

28

16

*Id.* at 142.  Indeed, the Supreme Court held all of the defendants were properly joined because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, here, it is not necessary for each of the defendants to have directly interacted with each other defendant, or have shared a piece of the file with each and every defendant when downloading the movie.  The defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers.  In doing so, the Defendants all acted under the same exact system.

The Honorable Mary McLaughlin from the Eastern District of Pennsylvania, , recently addressed this exact issue in a similar BitTorrent copyright infringement action.  Judge McLaughlin held joinder was proper even if the Doe defendants did not transmit the pieces directly to each other because the claims arise out of the same series of transactions:

> [E]ven if no Doe defendant directly transmitted a piece of the Work to another Doe defendant, the Court is satisfied at this stage of the litigation the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.

*Raw Films v. John Does 1-15,* 2012 WL 1019067 at *4.

## 2.    There Are Common Issues of Fact and Law.

The second requirement for permissive joinder under Rule 20(a)(2) requires Plaintiff's claims to contain a common question of law or fact. Fed. R. Civ. P. 20(a)(2)(B).  This requirement is clearly met.  Here, Plaintiff will have to establish the same legal claims concerning the validity of its copyrights and the infringement of the exclusive rights reserved to Plaintiff as copyright holder. Furthermore, Plaintiff must prove that each individual named as a defendant used the same BitTorrent file-

17

1  sharing protocol to illegally distribute and download its copyrights and, consequently,

2  factual issues related to how BitTorrent works and the methods used by Plaintiff to

3  investigate, uncover, and collect evidence about the infringing activity will be

4  essentially identical for each Defendant. *See Call of the Wild*, 770 F.Supp.2d 332 at

5  343 ("In each case, the plaintiff will have to establish against each putative defendant

6  the same legal claims concerning the validity of the copyrights in the movies at issue

7  and the infringement of the exclusive rights reserved to the plaintiffs as copyright

8  holders."). The commonality in facts and legal claims support joinder under Rule

9  20(a)(2)(B).

10            **3.      The Time Lapse Is Irrelevant.**

11        The nature of the BitTorrent protocol provides for continuous seeding and

12  distributing of the movie long after it has downloaded.  If, as in this case, a

13  Bittorrent user does not physically remove automatic seeding, an alleged infringer

14  will likely seed and distribute a movie for months at a time.  As the Eastern District

15  of Michigan explained:

16            [I]t is not that an infringer would wait six weeks to receive the Movie,
             it is that the infringer receives the Movie in a few hours and then leaves
17            his or her computer on with the Client Program uploading the Movie to
             other peers for six weeks. Because the Client Program's default setting
18            (unless disabled) is to begin uploading a piece as soon as it is received
             and verified against the expected Hash, it is not difficult to believe that
19            a Defendant who downloaded the Movie on day one, would have
             uploaded the Movie to another Defendant or peer six weeks later. This
20            consideration, however, is irrelevant since concerted action is not
             required for joinder.
21
   *Patrick Collins*, 2012 WL 1190840 at *9.
22
          The court went on to explain why time constraints should not impact the
23
   determination that the infringements occurred through a series of transactions:
24
   "[T]he law of joinder does not have as a precondition that there be temporal distance
25
   or temporal overlap; it is enough that the alleged BitTorrent infringers participated
26
   in the same series of uploads and downloads in the same swarm." *Id.*
27

28                                          18

In *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir. 2000) *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003), the Eleventh Circuit found that a lapse of a year between the events at issue is a "short time frame" for joinder purposes:

> As for the first requirement, all of the Plaintiffs' claims stem from *the same core allegation that they were subject to a systemic pattern* or practice of race-based discrimination against white law enforcement officers by Sheriff Barrett *in her first year in office*. Plaintiffs all seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame.

*Id.* at 1324 (emphasis added).  Here, all of the defendants engaged in the same systematic pattern of infringement.  And the time frame between the defendants on Exhibit A of the Complaint spans only a two-month period from the first hit date to the last hit date.  *See AF Holdings LLC v. Does 1-1,058*, -- F.Supp.2d --, 2012 WL 3204917 at *13 (D.D.C. August 6, 2012) ("Although some IP addresses in the Complaint are identified as infringing the plaintiff's copyright four months apart, at this stage there is no basis to rebut plaintiff's claims that the Listed IP Addresses were, at least potentially, part of the same swarm and provided or shared pieces of the plaintiff's copyrighted work.").

The Northern District of California is in accord: "While this period might seem protracted, such time periods can be somewhat arbitrary in BitTorrent-based cases as long as the alleged defendants participate in the same swarm, downloading and uploading the same file." *First Time Videos v. Does 1-95*, 2011 WL 4724882 at *6 (N.D.Cal. Oct. 7, 2011); *OpenMind Solutions*, 2011 WL 4715200 at*6 (same). "[E]ven after a Doe Defendant disconnects from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm." *First Time Videos*, 2011 WL 4724882 at *6.

Other courts, when ruling on the issue of joinder have held that even when conduct occurs over a lengthy period of time, defendants may still be properly

19

joined as long as the conduct is reasonably related. *See Kedra v. City of Philadelphia*, 454 F. Supp. 652, 662 (E.D. Pa. 1978) (holding joinder is proper when claims against police officers including unlawful searches, detentions, beatings and similar occurrences of multiple plaintiffs took place over a period of time).

> There is no logical reason why the systematic conduct alleged could not extend *over a lengthy time period* and, on the face of these allegations, there is nothing about the extended time span that attenuates the factual relationship among all of these events. The claims against the defendants "aris(e) out of the same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a), and therefore joinder of defendants in this case is proper.

*Id.* (emphasis added).  Similarly, in this case, while the actions of each of the defendants may have taken place over a period of time, the actions all arose from one initial seed and all display the same, related systematic conduct.

**B.      Joinder Is Proper Because Each Defendant Is Jointly and Severally Liable.**

Joinder is also proper because Plaintiff pled that each defendant is jointly and severally liable for each of the other defendant's infringement.  "It is, today, a given that 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.'"  *Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp.2d 688, 696 (M.D. 2001).  Here, Plaintiff properly pled contributory infringement (Complaint, ¶¶ 54-63), and will prove that there was one initial seeder that uploaded the subject torrent file identified by the unique hash value, and that when a Defendant receives a piece from a downstream infringer (*i.e.*, an infringer who already had that piece), then that Defendant will automatically begin distributing the piece it received from the downstream infringer to others. Plaintiff will thereby prove that said Defendant materially assists the downstream infringer's direct infringement of Plaintiff's exclusive right to "redistribute . . . the Work. . . ."  in

violation of 17 U.S.C. § 106(3) and 17 U.S.C. §501.  Similarly, Plaintiff will prove that when a Defendant provides a piece of Plaintiff's copyrighted work to an upstream infringer, the upstream infringer both sends that piece to other infringers and will also assemble the entire Work.  Accordingly, by delivering a piece to an upstream infringer, the Defendant is contributorily liable for materially assisting the upstream infringer to redistribute, perform and display the Work in violation of 17 U.S.C. § 106(3)-(5) and 17 U.S.C. § 501.

Since one of the grounds for permissive joinder is joint and several liability, should the Court hold that joinder is not permitted, then any such holding would effectively summarily adjudicate Plaintiff's claim for contributory infringement. Such a holding would be erroneous because contributory infringement is "a question of fact for trial." *Adobe Systems, Inc. v. Canus Productions, Inc.*, 173 F.Supp.2d 1044, 1055 (C.D. Cal. 2001); *Marobie-FL, Inc. v. National Ass'n of Fire Equipment Distributors*, 983 F. Supp. 1167 (N.D. IL 1997) ("fact questions precluded summary judgment with respect to providers' liability for contributory infringement"). Moreover, since BitTorrent works through the cooperative exchange among peers in a swarm, claims for contributory infringement must be permitted or the law would be inconsistent with the very nature of BitTorrent.

## C.  Joinder Promotes Judicial Efficiency And Is Not Prejudicial To The Putative Defendants.

At this stage in the proceedings, joinder "is the single, most efficient mechanism available for the plaintiff to obtain information to identify those illegally downloading and distributing its movie." *AF Holdings LLC*, -- F.Supp.2d --, 2012 WL 3204917 at *13.  Indeed, "[j]oinder in a single case of putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." *Open Mind Solutions*, 2011 WL 4715200 at *7; *see also*, *Call of the Wild*, 770 F.Supp.2d at 344 (same).

Here, Plaintiff seeks to obtain identifying information from ISPs so that it can properly name and serve Defendants. If the Court were to consider severance at this juncture, Plaintiff would face significant obstacles in its efforts to protect its copyright from illegal file-sharers, and this would only needlessly delay the case. Plaintiff would be forced to file 59 separate lawsuits, in which it would then move to issue separate subpoenas to ISPs for each defendant's identifying information. Plaintiff would additionally be forced to pay the Court separate filing fees in each of these cases, which would further limit its ability to protect its legal rights. "This burden for the plaintiff – not to mention the judicial system – would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity." *AF Holdings LLC, supra,* 2012 WL 3204917 at *13; *see also Call of the Wild*, 770 F.Supp.2d at 334 ("This would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" (citation omitted)).

Furthermore, the unknown Doe defendants are not prejudiced by joinder at this stage in the litigation:

> The unknown individuals alleged to have infringed the plaintiff's copyright are not prejudiced by joinder.  These individuals are identified only by the IP address assigned to the computers found by the plaintiff being used for allegedly infringing activity, and they are not named as defendants in this case.  Given that the plaintiff has not named or asserted claims against the individuals associated with the Listed IP Addresses, these unknown individuals have no obligation to respond to the Complaint or assert a defense.  If the plaintiff chooses to name as a defendant any of these unknown individuals – after obtaining their information and evaluating the viability of a lawsuit – the defendants may then be able to demonstrate prejudice by joinder with others accused of similar activity. *Until that time, these individuals can demonstrate no legally cognizable harm by virtue of the plaintiff filing a lawsuit against 'John Does.'*

*AF Holdings LLC*, 2012 WL 3204917 at *13; *see also Call of the Wild,* 770 F.Supp.2d at 334 (declining to sever defendants where parties joined promotes more efficient case management and discovery and no party prejudiced by joinder).  The

1  Court went on to find that "joinder at this stage in the proceedings is the single, most

2  efficient mechanism available for the plaintiff to obtain information to identify those

3  allegedly illegally downloading and distributing its movie." *AF Holdings LLC,*

4  2012 WL 3204917 at *13.

5       Put simply, the putative defendants are not prejudiced but likely benefitted by

6  joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted

7  material and seek redress from Defendants, who have allegedly engaged in

8  infringing activity.   At this preliminary stage, Plaintiff has met the requirements of

9  permissive joinder under Rule 20(a)(2), and, thus Doe 25's motion to quash should

10  be denied.

11      **D.**    **This Court Has Already Ruled That Joinder Is Proper**

12       The "law of the case" doctrine "posits that when a court decides upon a rule

13  of law, that decision should continue to govern the same issues in subsequent stages

14  in the same case." *Murdoch v. Castro*, 489 F.3d 1063, 1067-68 (9th Cir. 2007)

15  (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  This

16  rule of practice promotes the finality and efficiency of the judicial process by

17  protecting against the agitation of settled issues.  *Id.*  "For the doctrine to apply, the

18  issue in question must have been 'decided explicitly or by necessary implication in

19  [the] previous disposition.'"  *Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d

20  703, 715 (9th Cir. 1990).

21       Here, the Court has already found that joinder is proper when ruling on

22  Plaintiff's Motion for Leave to Serve Third Party Subpoenas. *See* Docket No. 5, p.

23  6.  The Court's finding was made without prejudice to Defendants' ability to raise

24  the issue after the disclosure of the Doe Defendants' identities.  *Id.*  Plaintiff

25  respectfully requests that the Court not deviate from its previous finding.

26      **E.**    **California Courts Agree That Joinder Is Proper.**

27       All three districts in California that have adjudicated joinder in BitTorrent

28                                       23

copyright infringement cases have held that joinder is proper.  Most recently, the

Northern District of California in *Third Degree Films, Inc.*, 2012 WL 3763649,

held:

> This Court is also cognizant of the logistical and administrative challenges of managing a case with numerous putative defendants, a number of whom may seek to file papers pro se.  However, severing the putative defendants at this early stage is no solution to ease the administrative burden of the cases.  As the case progresses, the Court may conclude that it is unmanageable, depending on the number of defendants served and appearing, or that, in fact, the claims do not arise from the same transaction and occurrence. At this time, however, the Court is not persuaded that Plaintiff could not withstand a motion to dismiss for improper joinder. The Court therefore declines to sever the Doe Defendants at this time.

*See also, Berlin Media Art E.K. v. Does 1-144*, 2011 WL 4056167 (E.D. CA. 2011)

(permitting discovery in joined case); *Malibu Media, LLC v. Does 1-25*, 2012 WL

2367555 at *3 (S.D.Cal. June 21, 2012); *Liberty Media Holdings, LLC v. Does 1-62*,

2011 WL 1869923 at *5 (S.D.Cal. May 12, 2011); *Patrick Collins v. Does 1-2590*,

2011 WL 4407172; *New Sensations, Inc. v. Does 1-1,474*, 2011 WL 4407222,

(N.D.Cal. 2011) (same);  *accord Hard Drive Productions, Inc. v. Does 1–46,* 2011

U.S. Dist. LEXIS 67314 (N.D. Cal. 2011) (same); *New Sensations, Inc. v. Does*

*1745*, 2011 WL 2837610 (N.D. Cal. 2011) (same, and opining "Judge Howell of the

D.C. Circuit has repeatedly held that [joinder is proper] in infringement actions" and

"[h]is analysis makes sense.").

## V.     A PROTECTIVE ORDER SHOULD NOT BE ISSUED

Rule 26(c) allows the Court to issue a protective order to limit discovery and

make any order which justice requires to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense.  A protective order should

be entered only when the movant makes a particularized showing of "good cause"

and specific demonstration of fact by affidavit or testimony of a witness with

personal knowledge, of the specific harm that would result from disclosure or loss of

24

1  confidentiality; generalities, conclusory statements and unsupported contentions do
2  not suffice. *Gulf Oil Company v. Bernard*, 452 U.S.89, 102 n.16, 101 S. Ct. 2193, 68
3  L. Ed. 2d 693 (1981); *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124
4  F.R.D. 652, 653 (D.Nev. 1989) ("the burden is on the party seeking relief to show
5  some plainly adequate reason for the order.").

6          Plaintiff has no intention of using the Doe defendants' identities for any reason
7  other than for litigation purposes.  Indeed, the Court's Order Granting Plaintiff Leave
8  to Serve Third Party Subpoenas specifically provides that Plaintiff "may only use the
9  information disclosed for the sole purpose of protecting its rights in pursuing this
10 litigation."  Docket 5, p.7, ¶ 6(B).  Other courts to address this issue have held that a
11 "putative defendant's First Amendment right to anonymity in the context of [their]
12 BitTorrent activity is minimal and outweighed by the plaintiff's need for putative
13 defendants' identifying information in order to protect its copyrights." *Donkeyball*
14 *Movie, LLC v. Does*, 810 F. Supp. 2d 20, 26 (D.D.C. 2011); *Arista Records LLC v.*
15 *Does 1-19*, 551 F.Supp.2d 1, 8 (D.D.C. 2008) ("First Amendment privacy interests
16 are exceedingly small where the 'speech' is the infringement of copyrights").
17 Furthermore, "[i]nternet subscribers do not have an expectation of privacy in their
18 [identifying information] as they have already conveyed such information to their
19 Internet Service Providers." *Achte/Neunte Boll Kino Beteiligungs GMBH & Co. Kg.*
20 *v. Does 1-4,577*, 736 F. Supp. 2d 212, 216 (D.D.C. 2010).

21 **VI.    CONCLUSION**

22          For all of the foregoing reasons, Plaintiff respectfully requests that the Court
23 deny Doe 25's motion to quash in its entirety.
24 DATED: September 7, 2012                    KUSHNER LAW GROUP

25                                            By:  ____/s/ Leemore L. Kushner____
26                                                 Leemore L. Kushner
                                                  Attorneys for Plaintiff Malibu Media, LLC
27

28                                          25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated:  September 7, 2012              KUSHNER LAW GROUP


By: */s/ Leemore Kushner*                        .
            Leemore Kushner
            Attorneys for Plaintiff MALIBU MEDIA,
            LLC

Plaintiff's Opposition to Doe 25's Motion to Reconsider, Sever, Quash, and for Protective Order